**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1595-LPS |
| LG ELECTRONICS., INC., LG ELECTRONICS USA, INC., and LG ELECONTRONICS MOBILECOMM U.S.A., INC. | |
| Defendants. | |
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1596-LPS |
| APPLE INC. | |
| Defendant. | |
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1599-LPS |
| MICROSOFT MOBILE INC. | |
| Defendant. | |

| | |
|---|---|
| ARENDI S.A.R.L., | : |
|     Plaintiff, | : |
| v. | :    C.A. No. 12-1601-LPS |
| MOTOROLA MOBILITY LLC<br>f/k/a MOTOROLA MOBILITY, INC. | : |
|     Defendant. | : |
| ARENDI S.A.R.L., | : |
|     Plaintiff, | : |
| v. | :    C.A. No. 12-1602-LPS |
| SONY MOBILE COMMUNICATIONS (USA)<br>INC. f/k/a SONY ERICSSON MOBILE<br>COMMUNICATIONS (USA) INC.,<br>SONY CORPORATION, and<br>SONY CORPORATION OF AMERICA | : |
|     Defendants. | : |
| ARENDI S.A.R.L., | : |
|     Plaintiff, | : |
| v. | :    C.A. No. 13-919-LPS |
| GOOGLE, LLC | : |
|     Defendant. | : |

| | |
|---|---|
| ARENDI S.A.R.L., | : |
|     Plaintiff, | : |
|     v. | :     C.A. No. 13-920-LPS |
| OATH HOLDINGS INC. and OATH INC. | : |
|     Defendants. | : |
| SMART LOCKING TECHNOLOGIES, LLC | : |
|     Plaintiff, | : |
|     v. | :     C.A. No. 19-992-LPS |
| IGLOOHOME INC. | : |
|     Defendant. | : |
| SMART LOCKING TECHNOLOGIES, LLC, | : |
|     Plaintiff, | : |
|     v. | :     C.A. No. 19-993-LPS |
| LOCKSTATE, INC. | : |
|     Defendant. | : |

## **MEMORANDUM ORDER**

At Wilmington this **2nd** day of **January 2020**:

WHEREAS, defendants in the above-listed cases have filed Rule 12 motions to dispose of patent infringement claims on the bases that certain patent claims are invalid under 35 U.S.C. § 101, because they are allegedly directed to unpatentable subject matter;

WHEREAS, the above-listed cases brought by Arendi S.A.R.L. ("Arendi") are unrelated to the above-listed cases brought by Smart Locking Technologies, LLC ("Smart Locking");

WHEREAS, the Court heard oral argument in all the above-listed cases on December 20, 2019 and has considered the parties' respective briefs and related filings;

WHEREAS, the Court continues to find that its experimental procedure of addressing multiple Section 101 motions from separate and unrelated cases in one hearing is an efficient use of judicial resources and a beneficial tool for resolving the merits of Section 101 motions;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, with respect to the above-listed Smart Locking cases, Defendants' Rule 12(b)(6) motions to dismiss (C.A. No. 19-992 D.I. 9, 16; C.A. No. 19-993 D.I. 8, 15) are **DENIED**.

**NOW, THEREFORE, IT IS HEREBY FURTHER ORDERED** that, with respect to the above-listed Arendi cases, Defendants' Rule 12(c) motions for judgment on the pleadings (C.A. No. 12-1595 D.I. 115; C.A. No. 12-1596 D.I 122; C.A. No. 12-1599 D.I. 123; C.A. No. 12-1601 D.I. 123; C.A. No. 12-1602 D.I. 115; C.A. No. 13-919 D.I. 122; C.A. No. 13-920 D.I. 126) are **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The motions are DENIED with respect to representative claim 1 of U.S. Patent No. 7,917,843.

2. The motions are GRANTED with respect to representative claim 93 of U.S. Patent No. 7,496,854, representative claim 2 of U.S. Patent No. 7,921,356, and representative claim 1 of U.S. Patent No. 8,306,993.

3. The motions are TAKEN UNDER ADVISEMENT with respect to asserted, arguably non-representative, dependent claims of the '854, '356, and '993 patents; the parties shall continue to comply with the process for supplemental briefing previously set out

(*see, e.g.*, C.A. No. 12-1595 D.I.177).

The Court's Order is consistent with the following bench ruling announced at that the conclusion of the December 20 hearing (*see* Tr. at 106-18):

> I'm going to talk about the motions in the order that they were argued earlier today. First, [are] the Smart Locking cases. The issue in front of me is Defendants' renewed [Rule] 12(b)(6) motion to dismiss for failure to state a claim. Defendants' motion is denied. Let me try to explain why.
>
> The motion contends that two asserted patents, [U.S. Patent Nos.] 6,300,873 and 6,696,918, are invalid under Section 101 due to lack of patentable subject matter. The legal standards that I'm applying . . . are set out [in the following cases.] . . . [As to] the Rule 12(b)(6) standard I hereby incorporate and adopt by reference the articulation of that standard in the *DiStefano Patent Trust [III] v. LinkedIn* decision, . . . which was a decision of mine in 2018, affirmed by the Federal Circuit . . . .[1] I also adopt the Section 101 standards articulated by the Federal Circuit in *Berkheimer v. HP, Inc.* . . .[2]
>
> The parties agree in the Smart Locking cases that one claim, claim 36 of the '873 patent, is representative and that the Court need assess the patentability of only this one claim. The parties agree that no claim construction disputes need to be resolved before addressing the motion.
>
> The Court concludes that Defendants have failed to make the necessary showing at both Steps 1 and 2 of the *Alice* test.[3]
>
> Starting with Step 1. The claims are directed to a device, a mechanism[,] which in the Court's view is not abstract. Although Defendants have identified an abstract idea, specifically "providing temporary access to a location," I'm not persuaded that the claim is directed to this abstract idea. . . . The character as a whole of claim

---

[1] *DiStefano Patent Trust III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019) (Rule 36).

[2] *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *en banc reh'g denied*, 890 F.3d 1369 (Fed. Cir. 2018), *petition for cert. filed*.

[3] *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 573 U.S. 208 (2014); *see also Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012).

3

36, the representative claim, is a physical device with two specific tangible components: an actuator and an access code entry unit. The access code entry unit further must be configured to accept a one-time use access code as described in columns 7 and 8 of the specification. Further, figures 1 and 2 of the patent illustrate embodiments of the access code entry unit[,] which further supports the Court's conclusion that the character of the representative claim as a whole is directed to something concrete and tangible and not abstract. . . .

Defendants cite the *ChargePoint*[4] decision for the concept that just because something is a physical product, [that] does not mean that Defendant fails at Step 1 of the *Alice* test to identify an abstract idea to which the claims are directed. And, I agree that that is generally true[. B]ut here, there is sufficient specificity to limit the claimed access code entry unit to those embodiments that are configured to accept a one-time use access code. So for those reasons, the motion fails at Step 1.

. . . .

At Step 2, the inventive concept is the one-time use access code; that is, an access code that can be used once and no more than once[;] as well as an access code entry unit configured to give that access. This inventive concept is clearly captured in the claims. You can't practice the claims without the one-time use access code and the access code entry unit configured to accept such a code.

Further, the [amended] complaint contains well-pleaded factual allegations that plausibly allege in a non-conclusory fashion that the claimed invention was not routine, conventional, or well understood at the priority date. For example, the amended complaint . . . adequately and plausibly alleges the one-time use access code was not wholly conventional, routine, and well understood. . . . [For] instance in paragraphs 14 and . . . 17.

Also helpful to the plaintiff in succeeding at Step 2 is that the specification expressly describes a problem in the prior art and explains how the invention is solving it. Cases such as *Cellspin*,[5] cited by Plaintiff, provide that this is helpful information for a

---

[4] *Charge Point v. Sema Connect*, 920 F.3d 759 (Fed. Cir. 2019), *petition for cert. filed*.

[5] *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), *petition for cert. filed sub nom.*, *Garmin USA, Inc. v. Cellspin Soft, Inc.*

patentee to allege and to have a specification that supports such allegations.

Defendants argue that the claims are not about an improvement to the device but about an improv[ement] to the performance of the locking mechanism device. I'm not sure how much . . . sense that distinction makes in this case or if it is even a meaningful distinction. In this case, the lock performs in such a way that the specification clearly explains the prior art device could not – I think what that means [is] . . . that the function of the lock is improved[.] [B]ut more importantly, the argument has not provided for me a persuasive basis to grant Defendants' motion.

Finally, I do not see a preemption problem. Given that Defendants have failed at Step 1 and Step 2, it can't be that there is some independent problem of preemption that makes the patents ineligible, nonetheless; but in any event, the claims seem to me to be pretty narrow and the plaintiff argues that they're pretty narrow. And, I think we saw evidence of that from the fact that the embodiment that Defendants started with, the hotel safe, is one that I think by their own admission actually isn't even within the scope of the claims because it's not limited to a one-time use only access code. . . .

So for all those reasons, the motion is denied.

Let me turn now to the Arendi cases.

The multiple defendants in these several cases [listed above] have all moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). I hereby adopt and incorporate by reference the Rule 12(c) standard as articulated in the *Intellectual Ventures I LLC v. AT&T Mobility, LLC* case . . . here in this court in 2016, affirmed by the Federal Circuit in 2019 . . . .[6] And I adopt, again, and incorporate by reference the [Section] 101 standard explained just [a] moment ago in connection with the Smart Locking cases.

The motions in the Arendi cases present a more difficult issue than the one in the Smart Locking case. This is first, but not principally, because in the Arendi cases, there are four patents, and I have to think about four representative claims as opposed to one representative claim. Happily for me, the parties are in agreement

---

[6] *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577 (D. Del. 2016), *aff'd*, 748 F. App'x 330 (Fed. Cir. 2019) (Rule 36).

as to which claims are the representative claims. And for purposes of the record, I'll just read them in: the 7,917,403 patent, claim 1; the 8,306,993 patent, claim 1; the 7,496,854 patent, claim 93; and the 7,921,356 patent, claim 2. The parties further agree no claim construction is required before deciding the motion as the Court has already issued its claim construction opinion.

The hard part for me on these motions is trying to figure out what type of patents these are. Are the representative claims of these patents directed to a computer-only context providing an alleged improvement in computer functionality? Or, instead, are these patent claims directed to automation of activity that has long been performed in the non-computerized physical world? That is, are they [merely] the conventional use of conventional computer components to do something more quickly or more efficiently, perhaps, but to do something that humans have long done before computers?

I'm having trouble deciding which of those two categories of patents these patents fall into [because] actually the patents fall somewhere in between these two categories. That is, I think the most reasonable view of these patents is that they are directed to solving a problem in a computerized context and, thereby, improving computer functionality, but [the] problem that they are addressed to [is one] that has long arisen in a non-computerized context. And by the way, the patents don't purport to solve the problem in the non-computerized context.

I also think that where in between those two categories these two patents fall is different among the four patents, which I will try to explain. The problem that I think the patents are directed to is how to get information from the second source when you are working in a first document. Clearly, this problem does arise in a computer context. As the specification explains, a user could be writing a letter in [a] word processing program and need the address of the recipient and need to retrieve that address from another program, such as a database. The patents disclose automating that retrieval and other automated interactions with the second program.

But equally clearly, such problems do also arise in the physical world, as I think was demonstrated today by counsel pretending to write a letter to Santa Claus and needing to get the address from her partner who [was] looking it up in a Rolodex while she continued to write her letter.

I'm not sure that the law is entirely clear as to how to apply

6

the *Alice* test to a patent that is directed to improving computer functionality where the problem purportedly solved is a problem that also exists in the physical world.

Noting all of those complications and the difficulty I have found, I need to make a decision. . . . [S]o I will turn to the two steps of the *Alice* test.

At Step 1, Defendants have identified an abstract idea; specifically, "identifying information in a document, searching for related information in a separate source, and using [the] found information in some way." That is an abstract idea. It is devoid of a concrete or tangible [application].

Is that abstract idea a fair characterization of the claims? I find that it is. All four of the representative claims involve doing what the abstract idea says. This is true even for the '993 patent which allows for the source database to itself be updated while the user is working in a first document. That concept is captured in the "using the found information in some way" portion of the Defendants' abstract idea . . . .

But these conclusions do not end the Step 1 analysis. And this is where the question arises: Are these claims directed to an improvement in computer functionality[;] . . . do they recite a specific implementation of a solution to a technological problem? The Federal Circuit cases and the parties seem to all agree that . . . this is a Step 1 question . . . .

So let me ask that question for each of the four representative claims.

First, with the '843 patent, claim 1. I find that this claim is directed to an improvement in computer functionality. Specifically, and looking carefully at the claim language, the claim is directed to displaying an electronic document using a first computer program, while displaying that document, analyzing first information in that document for types of information that can be searched for in an information source external to the document, caus[ing] a search for that type of information in the external information source, using a second computer program, and if any second information related to the search term is found, using at least part of that second information to perform an action in the first computer program. Given that understanding of representative claim 1 of the '843 patent, I find that Defendants have not met their burden at Step 1 with respect to this claim, and the motion is denied as to the '843 patent.

Further support for this interpretation and this conclusion about the '843 patent is found in at least four recent cases that the Court finds sufficiently analogous to this claim: *Data Engine*,[7] *Ancora*,[8] *Core Wireless*,[9] and *Finjan*[.][10] ... Defendants argue[] that the '843 patent, claim 1 is purely functional, that it doesn't disclose how this purported improvement in computer functionality is accomplished, and that the improvement isn't captured in the claims. But the Court is persuaded that the '843 patent claim is analogous to and as specific on these points as the claim language found adequate by the Federal Circuit in these other cases.

Defendants also argue that the claim only uses conventional computer components, but this does not provide a meritorious basis to grant the motion. As Defendants concede, the use of conventional computer components does not, by itself, lead to a conclusion of non-subject matter eligibility. And on this point, Arendi persuasively refers the Court again to *Data Engine*, *Ancora*, and *Finjan*.

Turning more briefly to the other three patents and their representative claims, I have reached the opposite conclusion. For example, the '993 patent, claim 1, I find is not directed to an improvement in computer functionality. Basically, I don't see where in this claim the ... purported inventive concept of beneficial coordination is captured in the claims. The claim does not appear to require that both applications be able to be opened at the same time. So I will grant the motion with respect to '993 patent, claim 1.

... There is no factual dispute to defeat the motion at Step 2 because whether beneficial coordination was routine, conventional, well understood is not a pertinent question given that that purported innovation is not captured in the claim.

It's a similar conclusion and analysis for both the '854 patent, claim 93, and the '356 patent, claim 2.

For the '854 [patent], claim 93, I find that the claim is not

---

[7] *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018).

[8] *Ancora Techs., Inc. v. HTC Am. Inc.*, 908 F.3d 1343 (Fed. Cir. 2018).

[9] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).

[10] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018).

directed to an improvement in computer functionality. The beneficial coordination concept is not captured in the claim. And all the points [that I] just made about the '993 patent apply equally here.

Similarly for the '356 patent, claim 2, I find that the claim is not directed to an improvement in computer functionality. I'm not seeing in this claim where the temporal limitation is present. That is, something that captures the purported improvement of being able to work in two programs at the same time and use information from one program in the other program without having to close one of the programs.

So all that said, the motion is granted with respect to the '993, '854, and '356 patent representative claims. The motion is denied with respect to the representative claim of the '843 patent.

I am going to provide the parties . . . an opportunity to brief how to apply my decision granting the motion with respect to the three patents ['993, '854, and '356] on the representative claim[s] . . . [to the] other asserted claims of those patents.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE